UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16-CR-102-JED |
| v. | ) |
| | ) |
| REUBEN JOE MERCADO, | ) |
| a/k/a "Reuben Knight," | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court are defendant Reuben Joe Mercado's First Motion to Suppress (Doc. 16) and his Second Motion to Suppress (Doc. 17). The government has opposed both Motions (Docs. 22, 23).

**I.   Background**

On August 12, 2016, defendant's brother, Adam Knight, failed to appear at his revocation hearing in Case No. 13-CR-51-02-GKF. A bench warrant was subsequently issued for Mr. Knight's arrest. Deputy United States Marshal Breland Speaks was assigned the warrant and initiated efforts to locate Mr. Knight, which included interviewing his former girlfriend, Sara Evans. Ms. Evans informed Deputy Speaks that she had last seen Mr. Knight when she transported him to defendant's house in Tulsa on August 29, 2016. Ms. Evans also informed Deputy Speaks that Tim Patterson, defendant's employer, routinely transported defendant to and from work.

On August 30, 2016, Deputy Speaks, along with other law enforcement officers, surveilled defendant's house from approximately 1:30 p.m. to 5:45 p.m. They observed Tim Patterson, defendant's employer, drop defendant at his house at approximately 5:45 p.m. The

officers also observed other individuals entering and leaving defendant's house, but did not see Mr. Knight nor did they obtain any information suggesting that Mr. Knight was at defendant's house. The officers resumed surveillance at 7:00 a.m. the next day. At 8:45 a.m., the officers observed Mr. Patterson arrive at defendant's house in the same truck he had driven the day before. Mr. Patterson entered defendant's house with an unknown female, and later left defendant's house along with defendant. Mr. Patterson and defendant sat in the truck and began their commute to work.

Deputy United States Marshal Jason Remelius and Task Force Officer Ray Gooldy left the surveillance scene, followed Mr. Patterson's truck, and initiated a stop. Defendant was seated in the passenger seat. The officers asked defendant if his brother was in his house, to which defendant responded that he was not. The officers asked for defendant's consent to search his house, which defendant refused. The officers then requested defendant's driver's license. A scan of defendant's license revealed that he had an outstanding Tulsa County warrant. Defendant was arrested on the outstanding warrant and transported to David L. Moss.

Later that day, Deputy Speaks observed Mr. Knight briefly step outside of defendant's house and then return inside. Law enforcement continued surveillance until backup officers arrived. The officers knocked on the door to defendant's house and Mr. Knight answered the door. Mr. Knight was immediately arrested.

The Indictment charges defendant under Count One with making false statements to a Deputy United States Marshal in violation of 18 U.S.C. § 1001(a)(2), and under Count Two with felony harboring and concealing in violation of 18 U.S.C. § 1071. (Doc. 9).

## II.     First Motion to Suppress (Doc. 16)

Defendant's First Motion to Suppress argues that the officers initiated an illegal traffic stop and thus all of defendant's statements to the officers during the stop should be suppressed.

"A traffic stop is a seizure within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *see also Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) ("A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment."). A traffic stop is "more analogous to an investigative detention than a custodial arrest." *Id.* Thus, the analysis under *Terry v. Ohio*, 392 U.S. 1 (1968), governs. *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001). A passenger may challenge the legality of a traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 332, (2009).

Courts assess the reasonableness of a traffic stop under the Fourth Amendment using the following two-step inquiry from *Terry v. Ohio*: first, the district court determines "'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Botero-Ospina*, 71 F.3d at 786 (quoting *Terry*, 392 U.S. at 20). Under the first prong of *Terry*, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* at 787. In other words, "the detaining officer must have a reasonable articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity." *United States v. Nicholson*, 983 F.2d 983, 987 (10th Cir. 1993). An

3

investigative detention, such as a traffic stop, must be based on "'specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion.'" *United States v. Lee*, 73 F.3d 1034, 1038 (10th Cir. 1996) (quoting *Terry*, 392 U.S. at 21)). The second *Terry* prong generally requires that "an investigative detention . . . 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Cervine*, 347 F.3d 865, 870-71 (10th Cir. 2003) (quoting *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (internal quotations omitted)).

Defendant's argument rests on the first *Terry* prong. Specifically, defendant argues that there was no justification for the initiation of the traffic stop. (Doc. 16 at 4-5). In response, the government argues that the information provided by Ms. Evans, in addition to the officers' observations of defendant's residence, were sufficient to justify the traffic stop. (Doc. 22 at 4). The government appears to admit that the officers did not observe a traffic violation, nor did they have any reasonable articulable suspicion that a traffic violation had occurred. The Court agrees with defendant. Contrary to the government's assertion, the officers' observations yielded no additional facts regarding Mr. Knight's whereabouts prior to the traffic stop. Thus, the sole piece of evidence the government relies on to justify the traffic stop was Ms. Evans' statement that she transported Mr. Knight to defendant's house on August 29, 2016. The Court finds that this fact alone did not provide the officers with a reasonable articulable suspicion to justify an investigative detention of defendant on August 31, 2016.

First, the officers' surveillance of defendant's property failed to provide any corroborating information regarding Mr. Knight's whereabouts prior to the initiation of the traffic stop. While the government attempts to argue that the officers' observations corroborating Ms. Evan's statement that Mr. Patterson transported defendant to and from work

4

supports an inference that Mr. Knight was present at defendant's house, the Court finds no merit to this argument. (Doc. 22 at 6). Second, two days had elapsed between the date Mr. Knight was allegedly taken to defendant's house and the date of the traffic stop. The government has presented no facts to support any reasonable inference that Mr. Knight would be present at defendant's house two days later. *See Lee*, 73 F.3d at 1038. Further, the record does not indicate Mr. Knight was hiding at defendant's house—Ms. Evans merely stated that she had taken him there on August 29, 2016. Taken alone, without any corroborating evidence observed by the officers, Ms. Evan's statement did not provide law enforcement with a reasonable articulable suspicion that defendant was engaged in criminal activity—*i.e.*, that defendant was hiding Mr. Knight at his house—when they initiated the traffic stop. As the record lacks "reasonable inferences from [specific and articulable] facts," *Terry*, 392 U.S. at 21, the Court is unable to determine that the traffic stop was justified at its inception. The officers' stop violated defendant's Fourth Amendment rights as a matter of law.

Next, the government argues that under *United States v. Holt*, 229 F.3d 931 (10th Cir. 2000), law enforcement may run a background check in conjunction with a traffic stop, and thus the officers in this case were justified in performing a warrants check on defendant. (Doc. 22 at 7). Yet in *Holt*, the traffic stop at issue was justified—the only issue on appeal was whether, under the second *Terry* prong, the scope of the investigatory detention exceeded the scope of the stop's original purpose. *Id.* at 934-35. Here, the Court has determined that the government has failed to satisfy the first *Terry* prong and thus *Holt* is inapplicable.

Because the Court has concluded that the stop was illegal, the Court must next determine whether the government has shown that defendant's statements and the officers' discovery of his

5

outstanding Tulsa County warrant[1] were not fruits of the illegal stop, but were obtained by "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). The Supreme Court has identified the following four factors relevant to the determination of whether statements made to officers or evidence obtained after an illegal seizure are admissible: (1) whether the individual was advised of his *Miranda* rights; (2) the temporal proximity of the statements to the Fourth Amendment violation; (3) the existence of intervening causes between the violation and the statements; and (4) the purpose or flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

Here, the factors weigh heavily against the government. First, defendant has stated that he was neither advised of his *Miranda* rights nor did he waive his rights. (Doc. 17 at 4). Second, the record supports an inference that defendant's statements and discovery of his warrant occurred immediately after the Fourth Amendment violation—that is, after the officers' unjustified initiation of the traffic stop. Third, the record lacks evidence of any intervening circumstances. Lastly, while the Court does not find the officers' conduct to be grossly flagrant, as discussed above, the government has failed to demonstrate that the officers had reasonable suspicion to conduct the stop. Therefore, the Court finds that defendant's statements and the officers' discovery of the warrant were the product of the illegal stop and were not purged of the primary taint. Accordingly, defendant's First Motion to Suppress (Doc. 16) must be granted.

**III.    Second Motion to Suppress (Doc. 17)**

Defendant's Second Motion to Suppress asserts that defendant's statements to the officers and the officers' discovery of his outstanding Tulsa County warrant should be

---

[1] While defendant requests exclusion of the officers' discovery of the warrant in his Second Motion to Suppress (Doc. 17), the Court finds it appropriate to analyze this evidence as part of defendant's First Motion because the officers' knowledge of the warrant was obtained as a result of the challenged traffic stop.

suppressed because they were the result of a custodial interrogation. Defendant's Second Motion to Suppress essentially presents an alternative argument to his First Motion to Suppress, which the Court has granted. Defendant's Second Motion to Suppress (Doc. 17) is therefore moot.

## IV. Conclusion

For the reasons discussed, defendant's First Motion to Suppress (Doc. 16) is **granted** and defendant's Second Motion to Suppress (Doc. 17) is **moot**.

SO ORDERED this 12th day of October, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE